IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EWART JONES, JR. § | |
| § | |
| Plaintiff § | |
| § | |
| vs. § | Case No. 4:14-cv-866 |
| § | |
| CYPRESS-FAIRBANKS INDEPDENT § | |
| SCHOOL DISTRICT; DR. MARK HENRY, In his § | |
| Official Capacity; TRUSTEE THOMAS § | |
| JACKSON, in his Official Capacity; TRUSTEE § | |
| CHRISTINE HARTLEY, in her Official Capacity; § | |
| TRUSTEE DARCY MINGOIA, in her Official § | |
| Capacity; TRUSTEE KEVIN HOFFMAN, in his § | |
| Official Capacity; TRUSTEE DR.JOHN § | |
| OGLETREE, in his Official Capacity; TRUSTEE § | |
| DON RYAN, in his Official Capacity; TRUSTEE § | |
| BOB COVEY, in his Official Capacity, § | |
| § | |
| Defendants. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I. Introduction

1. Plaintiff Ewart Jones, Jr. ("Jones" or "Plaintiff") brings this lawsuit, filing this his Original Complaint against the following: Cypress-Fairbanks Independent School District ("Cy-Fair ISD"); Dr. Mark Henry, Superintendent of Cy-Fair ISD, in his Official Capacity only; and Tom Jackson, Christine Hartley, Darcy Mingoia, Kevin Hartley, Dr. John Ogletree, Don Ryan and Bob Covey, all members of the Board of Trustees of Cy-Fair ISD, in their Official Capacities only (collectively "The Board"), seeking damages due to: (1) sexual harassment by Jones' former supervisor Kristina Perez ("Perez"), (2) unlawful discrimination based on sex for retaliation against Jones for reporting

1

the harassment; (3) constructive discharge from employment; and (4) failure to properly hire, train or supervise employees to not sexually harass or discriminate employment decisions.

2. Plaintiff brings suit pursuant to Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e-2(a)(1), seeking money damages, and attorneys fees, pursuant to 42 U.S.C. § 2000e-5(k).

## II. Parties

3. Each of the preceding paragraphs is incorporated herein by reference.

4. Plaintiff Ewart Jones, Jr. is an individual who resides at 11711 Memorial Dr, 337, Houston, Texas 77024. He is a former employee of Cy-Fair ISD.

5. Defendant Cypress-Fairbanks Independent School District is a political subdivision of the State of Texas, located within the jurisdictional bounds of this court. Pursuant to Texas Civil Practices and Remedies Code § 17.024, the school district may be served with citation by serving the superintendent. Dr. Mark Henry is the Superintendent of Cy-Fair-ISD, and has a business address of 10300 Jones Road, Houston, Texas 77065.

6. Dr. Mark Henry ("Henry) is the Superintendent of Cy-Fair ISD. His business address is 10300 Jones Road, Houston, Texas 77065. Henry is sued in his official capacity only. He may be served at his business address. He may be served with process through the Office of General Counsel, Ms. Marney Collins Sims, Cypress-Fairbanks Independent School District, at the same address.

7. Tom Jackson ("Jackson") is a Trustee of the Cypress-Fairbanks Independent School District. Trustees of Cy-Fair ISD are effectively the school board for Cy-Fair ISD. Jackson is being sued in his official capacity only. Jackson may be served with process through the Office

of General Counsel, Ms. Marney Collins Sims, Cypress-Fairbanks Independent School District, 10300 Jones Road, Houston, Texas 77065.

8. Christine Hartley ("Hartley") is a Trustee of the Cypress-Fairbanks Independent School District. Trustees of Cy-Fair ISD are effectively the school board for Cy-Fair ISD. Hartley is being sued in her official capacity only. Hartley may be served with process through the Office of General Counsel, Ms. Marney Collins Sims, Cypress-Fairbanks Independent School District, 10300 Jones Road, Houston, Texas 77065.

9. Darcy Mingoia ("Mingoia") is a Trustee of the Cypress-Fairbanks Independent School District. Trustees of Cy-Fair ISD are effectively the school board for Cy-Fair ISD. Mingoia is being sued in her official capacity only. Mingoia may be served with process through the Office of General Counsel, Ms. Marney Collins Sims, Cypress-Fairbanks Independent School District, 10300 Jones Road, Houston, Texas 77065.

10. Kevin Hoffman ("Hoffman") is a Trustee of the Cypress-Fairbanks Independent School District. Trustees of Cy-Fair ISD are effectively the school board for Cy-Fair ISD. Hoffman is being sued in his official capacity only. Hoffman may be served with process through the Office of General Counsel, Ms. Marney Collins Sims, Cypress-Fairbanks Independent School District, 10300 Jones Road, Houston, Texas 77065.

11. Dr. John Ogletree ("Ogletree") is a Trustee of the Cypress-Fairbanks Independent School District. Trustees of Cy-Fair ISD are effectively the school board for Cy-Fair ISD. Ogletree is being sued in his official capacity only. Ogletree may be served with process through the Office of General Counsel, Ms. Marney Collins Sims, Cypress-Fairbanks Independent School District, 10300 Jones Road, Houston, Texas 77065.

12. Don Ryan ("Ryan") is a Trustee of the Cypress-Fairbanks Independent School District. Trustees of Cy-Fair ISD are effectively the school board for Cy-Fair ISD. Ryan is being sued in his official capacity only. Ryan may be served with process through the Office of General Counsel, Ms. Marney Collins Sims, Cypress-Fairbanks Independent School District, 10300 Jones Road, Houston, Texas 77065.

13. Bob Covey ("Covey") is a Trustee of the Cypress-Fairbanks Independent School District. Trustees of Cy-Fair ISD are effectively the school board for Cy-Fair ISD. Covey is being sued in his official capacity only. Covey may be served with process through the Office of General Counsel, Ms. Marney Collins Sims, Cypress-Fairbanks Independent School District, 10300 Jones Road, Houston, Teas 77065.

### III. Jurisdiction and Venue

14. Each of the preceding paragraphs is incorporated herein by reference.

15. Plaintiff brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e-2(a)(1), *et seq*, seeking money damages, and attorneys' fees pursuant to 42 U.S.C. §2000e-5(k). Therefore, there is federal question jurisdiction for which this District Court has original jurisdiction pursuant to U.S. Const. Art. 3, and 28 U.S.C. § 1331.

16. The claims and causes of action arose and occurred in Harris County, Texas. The District Courts of the Houston Division of the Southern District of Texas are the proper venue for cases with facts arising in Harris County, Texas pursuant to 28 U.S.C. §1391(b)(2). Further, Cy-Fair ISD is resident in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. §1391(c)(2).

### IV. Facts

17. Each of the preceding paragraphs is incorporated herein by reference.

      a.    <u>Jones' position at Cy-Fair</u>

18. Jones was hired as Program Coordinator for the Office of Community Programs at Cy-Fair ISD. His specific duties were to develop and run, under the supervision of Kristina Perez, the outdoor and special programs at Cy-Fair ISD campus facilities. These were open to the public in an effort to bring revenue into the District. These included a Parents Night Out program in the Elementary Schools. They also included an evening program in the Junior High Schools called Fast Forward where Junior High kids came to play Laser Tag, there was a DJ present, and other evening entertainment. There was an outdoor education program to utilize the District's ropes course by local businesses. And, last, there was the creation of an evening swim-lesson program.

19. Jones' position was paid salary. It had work hours during the day with rare evenings, such as during the Fast Forward program. Jones' position did not include consistent work at night, and did not include work during both the day and continuing into the night on a regular basis.

20. Jones is the father of two small children. At the time he worked for Cy-Fair ISD, his eldest daughter was 14 to 20 months old and Jones shared child-rearing duties with his daughter's mother. He specifically cared for his daughter in the evenings. For this reason, Jones specifically did not take a job that required constant, or even frequent, work in the evenings when he would have to care for his daughter. His job was not posted or described with such duties or time requirements.

21. Jones interviewed with his future supervisor, Kristina Perez. Perez was hired from McKinney Independent School District, where she had run a similar program utilizing district building resources to create an after-school program that generated revenue for McKinney ISD. When Perez was hired by Cy-Fair ISD, she brought over much of her staff to Cy-Fair ISD.

      a.    <u>Office culture promoted by Perez</u>

22. Perez ran the department that Jones worked in, as well as being Jones' direct supervisor. The district had an assigned Human Resources supervisor inside the Office of Community Programs ("the Department"), named Fernando Zambrano ("Zambrano"). On August 26, 2011, the fifth day of Jones' employment, there was an ice cream social and get-to-know-you for Jones. At this ice cream social, Zambrano referred to someone else on staff as "Laura Labia," with direct sexual reference to the sexual organ of a female staff member. Such sexually charged banter was tolerated by the supervisory staff, including Perez. Coming from an HR professional showed not only that Cy-Fair ISD condoned sexual harassment, but that it had completely failed to train even HR staff on appropriate workplace laws and decorum.

23. Zambrano, like much of the leadership staff at the Department had prior connections to Perez. Zambrano had worked with her, not at McKinney, but at the Boys & Girls Club. In addition, Perez' assistant director, financial director, and after-school coordinators were all employees under Perez' supervision at McKinney ISD. The employees who followed Perez from McKinney ISD routinely engaged in inappropriate sexual conversations and pranks and even discussed Perez' sexual relationship with a male employee at McKinney ISD while she worked there. These actions were not only tolerated, they were encouraged by Perez.

24. Perez was brought over to Cy-Fair ISD with this history of inappropriate sexual conversation, sexual pranks, and over-sexualization of office behavior known by those who recruited her. Cy-Fair management and The Board failed to properly vet and hire supervisory staff, including Perez, or tacitly supported discriminatory and sexually harassing behavior by those thought to bring money to Cy-Fair ISD. The Board and Superintendent Henry also failed to properly train staff on anti-discrimination law, including Human Resources staff.

    b. <u>Harassment of Jones by Perez began early</u>

6

25. Jones began his work for Cy-Fair ISD on August 22, 2011. On August 24, 2011, he was speaking with Perez about the swim instruction program he would be organizing for Cy-Fair ISD. Perez asked Jones if he would be wearing a Speedo swimsuit. Jones said, "No one should wear a Speedo" and returned to talking about the swim instruction program. Jones' dismissive response did not end the issue. It became a recurring theme of harassment by Perez. Every time that Jones had to talk to Perez about the swim program he was developing, which was once to twice per week for six months, Perez voiced here disappointment that Jones would not be wearing a Speedo. Jones told Perez that such statements were not professional, to which she replied, "Really?" as if it were a joke.

26. On December 19, 2011, immediately following a staff Christmas gathering, members of the staff were joking around and dancing before leaving for the evening (no one was speaking about the swim program). Perez walked up to the group where Jones was standing, pointed to the dancing, and asked what was going on. Someone said, "Ewart is doing dance moves." Perez said, "I want to see those in a Speedo," indicating that she wanted Jones to act as a stripper for her.

27. Perez's harassment continued. On January 5, 2012, the administrative staff was at a development meeting at the Cy-Fair Administration Building and had been divided into groups. They had been asked to write down five values in today's society. Perez came over to the group and looked at the papers. Someone had written down "instant gratification" as a value in today's society. Perez saw it and asked, "Are you talking about masturbation?" Perez then continued to joke about masturbation during the rest of the meeting. Jones was visibly frustrated about Perez' lack of professionalism, so much so that Wells noticed his body language when she visited the meeting.

28. Other inappropriate comments/conversation included Perez referring to a female employee as "butch," asking Jones who he would be attracted to if he were gay, and referring to Ms. Teresa Hull ("Hull"), Associate Superintendent for Human Resources, as "hot."

29. In addition to these incidents, Perez stated on repeated occasions that Jones' having a young daughter was adversely affecting his sex life. She also stated when she thought Jones was in a bad mood, that "she knew something that could fix it," thereby offering sex to Jones.

30. As stated above, Jones complained to Perez about the sexual harassment. Jones felt it would be no use lodge a complaint with Zambrano, the Department HR rep who referred to a staff member as "Laura Labia."

31. Instead, Jones tried to ignore Perez and tried to avoid Perez's sexual innuendo and advances, to no avail.

    c. <u>Adverse Employment Action/Retaliation against Jones</u>

32. Perez demonstrated a history of retaliation. Perez had a habit of referring to a male employee as "Mr. Hottie." Jones told Perez that she couldn't say that; that it was unprofessional. Perez also instructed Jones not to schedule the male employee at events that she would be attending "because she did not want to be tempted." Jones voiced his displeasure with this request and made it clear that such a request was inappropriate and illegal. Around the same time, Perez decided that the Department staff would all be required to wear Halloween costumes to work on Halloween. During a staff meeting Jones and another employee, Elisha Nelson (Director of Curriculum), suggested that wearing costumes could be voluntary. Perez was annoyed by the suggestion and replied that she thought her staff was more "social" and decided to ban wearing costumes on Halloween.

33. Immediately following the staff meeting Perez sent an email requiring Jones and Nelson to sit in after-hours meetings in which they played absolutely no part, and had no role. Perez knew that Jones cared for his toddler daughter in the evening. As a salaried employee, Jones was not paid for these unnecessary meetings, and they were purely punitive.

34. Perez also retaliated against Jones and took an adverse employment action against Jones by changing his work schedule in a more dramatic fashion. After the January 5, 2012 Administrative Staff meeting in which Perez spent the day joking about masturbation and Jones objected, Perez called Jones into a meeting in which Melanie Dobney, ("Dobney") and Zambrano were present to speak with Jones about his attitude. Perez specifically chided Jones about his attitude during the January 5, 2012 meeting and stated that Wells had noticed his negative body language. As his attitude was being characterized as inappropriate, Jones asked why gratuitous talk about masturbation in the workplace was appropriate. Perez replied that the staff enjoyed her sense of humor.

35. As stated above, part of Jones' duties was to create a swim-lesson program. Jones created the program. Jones was expected to be onsite only rarely to monitor the program, but not to supervise it. A supervisor's position was written into the swim-lesson program and approved by Perez. The swim lessons were to take place at night. After Jones questioned the unnecessary and repeated use of the word "masturbation" at the January 5, 2012 professional meeting, Perez informed Jones that he would have to be present for the duration of every swim lesson for the two-month length of the program. This would have the effect of making Jones' work days over twelve hours long, and push his workday into the late evening, when Perez knew he had to take care of his young daughter. This was uncompensated time and an adverse employment action. It was

also retaliation. Because it was impossible for Jones to be present at every swim lesson and care for his daughter, the change in duties constituted a constructive discharge.

36. After this, Jones called Hull, and sought to lodge a complaint. His calls were not returned until he left a message explicitly stating that he wanted to talk about sexual harassment by Kristina Perez. This led to a meeting with Christina Cole, Director of Employee Relations and Professional Staffing. Jones went through the history of sexual harassment and propositions by Perez. Cole asked what outcome he sought. Jones stated that he wanted the harassment to stop. Jones was then called into a meeting with Hull and Wells. In that meeting, they went over the same charges. Hull and Wells stated that they would confront Perez and that Jones' allegations would be kept confidential.

37. They were not. Within a few days, Jones walked out of his office and saw Zambrano giving a shoulder rub to one of the coordinators, Luis Camarillo. Zambrano made a grand gesture of pulling his hands away when he saw Jones coming and started laughing with Camarillo. This showed that Jones' allegations were not, in fact, kept confidential at all. Jones' co-workers who had come from McKinney ISD with Perez also treated him differently after Jones reported Perez' misconduct.

38. Jones had his second meeting with Hull and Wells to go over their findings regarding his sexual harassment allegations against Perez. Hull stated that while Perez' comments and actions were inappropriate, Perez believed that Jones "fit in" with the other employees and was shocked that Jones had reported Perez's behavior. Hull and Wells also gave Perez' justifications for her behavior and indicated that Jones had given indications that he was comfortable with the behavior. This was false.

39. Wells stated that Jones would have to attend all swim lessons in person as she had a policy that administrators of programs had to be personally present at all times. Wells also questioned Jones as to why he would not want to be present at every swim lesson. Jones pointed out that a supervisor position had been drafted into the swim program, and approved, and that there were other programs under Wells' authority in which the administrative coordinator was not present at all times. Jones also stated that caring for his young daughter in the evenings after working all day would be a reason for not being present for every swim lesson. Wells said she would look into the other programs that did not have the "proper supervision," but had no response about Jones' concern about caring for his daughter in the evenings after the end of a normal work day. There was also no response regarding extending Jones' work day well into the evening for months at a time with no extra compensation. Jones would have to work nights as well as days, with no extra compensation, and would not be able to care for his daughter.

40. Hull and Wells informed Jones that directives were given to Perez and that records would be kept of the proceedings. Hull asked if the harassment had stopped. Jones stated that the inappropriate comments directed at him had ceased, but that the confidentiality of these proceedings was broken, creating an unpleasant working environment. Jones related the story of Zambrano and Camarillo. Hull's response was that she routinely gave her secretary shoulder rubs, ignoring the issue of confidentiality.

41. Wells confirmation of the negative change in Jones' job status and effective decrease in pay for time to be worked (by increasing Jones' work hours dramatically with no commensurate pay increase, and making him work nights as well as days for months) after he reported sexual harassment, constituted retaliation for the reporting of sexual harassment to upper management of Cy-Fair ISD, and it also constituted an adverse employment action under Title VII. Jones' job

11

position was salaried and had reasonable time requirements when he hired in, which did not include months-on-end evening and night work in addition to full days. By changing Jones' work hours to include every evening for a two-month period for the swim lessons, Cy-Fair had changed his employment status. Further, this work was without additional compensation. It was also done with full knowledge that Jones had to care for his young daughter in the evenings, and was done with the aim to force him to quit, as Perez and Wells knew that he could not perform their new, arbitrary and unnecessary duties and continue on his job. Thus, it constituted a constructive discharge.

### V. Causes of Action – Title VII Employment Discrimination Based on Sex

42. Each of the preceding paragraphs is incorporated herein by reference.

   a. <u>Adverse employment action</u>

43. Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e-2(a)(1) forbids an employer to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's ... sex." In the Fifth Circuit, to make a *prima facie* case of sexual harassment, the plaintiff must demonstrate that: (1) he or she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. Under Title VII, an employee has engaged in protected activity if he or she has "opposed any practice made an unlawful employment practice under [Title VII]." *Royal v. CCC & R Tres Arboles, LLC,* 736 F.3d 396, 400 (5th Cir. 2013); citing 42 U.S.C. § 2000e-3(a).

44. The Supreme Court has distinguished between two classes of cases; those in which "a supervisor takes a tangible employment action against the subordinate," and those where "the agency relation aids in commission of supervisor harassment which does not culminate in a

tangible employment action." *Butler v. Ysleta ISD*, 161 F.3d 263, 268 (5th Cir. 1998); citing *Burlington Indus. Inc. v. Ellerth*, 542 U.S. 742, 118 S.Ct. 2257, 2268, 69 (1998). "Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act." *Id*; citing *Burlington Indus. Inc.* at 2269. When a supervisor takes such an action, the action by the supervisor becomes the action of the employer. *See id.* In such cases, the employer is necessarily liable. *Id.* Although the Supreme Court did not concisely define "tangible employment action," it did note that such an action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.*; citing *Burlington Indus. Inc.* at 2268.

45. Jones engaged in a protected activity: he objected to being sexually harassed by his supervisor and reported it. He was the target of sexually charged comments by Perez. Perez continually stated that she wanted to see him in a Speedo. She wanted him to dance for her in a speedo, like a stripper. Perez continually stated that Jones' having a young daughter was putting him in a bad mood by affecting his sex life, and she could fix it (by having sex with him).

46. An adverse employment action occurred after Jones rebuffed Perez and reported her harassment. Jones' work hours and work duties were changed in a way which was detriment to him. He was forced to attend meetings, at night and after hours, for which he was not compensated and at which he played no role. More importantly, Jones was told by both Perez and Wells, her boss – after he reported the harassment - that he would have to be physically present not only during the day, but also at night for two straight months at the swim lessons. This would change the terms of Jones' employment to go from day work, to day and night work, with unpaid extra

hours. Further, the unpaid extra work and was meant to prevent Jones from caring for his young daughter at night. Due to the nature of Jones known need to care for his daughter, this constitutes constructive discharge and is legally akin to firing Jones by forcing him to resign. As shown above, there is a causal link between the protected activity and the adverse employment activity.

    b. <u>Hostile work environment</u>

47. An employer may be vicariously liable "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Butler v. Ysleta ISD*, 161 F.3d at 269; citing *Burlington Indus. Inc.* at 2270. In order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Id.* Whether an environment meets this standard depends on "'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* A hostile work environment based on sex may be a violation of Title VII. Such a violation occurs when the plaintiff proves he or she: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Royal v. CC & R Tres Arboles, LLC*, 736 F.3d at 401.

48. Perez's actions created a hostile work environment for Jones. Jones belongs to a protected group. He is male and was being sexually harassed by a female superior due to his gender as a male and the sexual wants of a female supervisor. He was subjected to unwelcome harassment,

which was based on sex. The harassment affected a term, condition, or privilege of his employment. The harassment was objectively and subjectively abusive. It was frequent, severe, and humiliating. Perez continually commented publicly to the rest of the department about wanting to see Jones in a Speedo. She also told Jones that she could fix his sexual frustration. This interfered with Jones' work performance. Perez, who was the harasser, was Jones' immediate supervisor. When Jones complained to District HR, Wells - Perez's boss, and ostensibly Jones' boss's boss - did not stop the harassment, but instead backed Perez in retaliating against Jones by changing Jones' work schedule to deliberately interfere with his ability to raise his daughter, and to make him work unnecessarily without additional pay. Further, District HR did not keep his report confidential. The rest of the department knew about his complaint, and acted differently toward Jones. This is also a form of retaliation.

    c.    <u>Improper Hiring and Supervision by Superintendent and Board of Trustees</u>

49. As stated above, Perez' sexualization of the office was not new to Cy-Fair ISD. She had exhibited similar behavior at McKinney ISD. When she was hired at Cy-Fair, Henry (the district Superintendent) and the members of the Board of Trustees did not properly vet her hiring to learn of her history. If, in the alternative, they did know of this history, then they knowingly hired a person who sexually harassed employees in the workplace.

50. Cy-Fair ISD's Board of Trustees' website (www.cfisd.net/aboutour/board/keyrole.htm) states that the board and its members not only exercise leadership and draft policies for the operation of local schools, hire and evaluate the superintendent, authorize the appointment of teachers and other staff (like Perez), but also consider the appointment, employment, evaluation, reassignment, duties, discipline and dismissal of officers and employees in the district. As such, the Board of Trustees has a direct, elected, supervisory role in hiring staff, administering district

programs, and disciplining staff, including for such things as complaints of sexual harassment. Jones' complaints about Perez's harassment made their way to the Board of Trustees. They were met with no action against Perez. Instead, Jones was retaliated against. The Board of Trustees showed, in hiring Perez with her known history from McKinney ISD of sexual harassment, and in hiring her staff from McKinney, that the Board of Trustees placed the goal of profiting from the district's physical resources ahead of obeying federal anti-discrimination law and providing a discrimination-free workplace.

51. Likewise, the same district website states regarding the Superintendent, Henry:

> The Superintendent of Schools is appointed by the Board and acts as its executive officer in administering its policies in the operation of schools. He also acts as an advisor in keeping the Board informed of the needs and progress of the schools. The Superintendent is available to the Board as a professional resource, and his recommendations normally precede board action on questions relating to recruitment and supervision of professional staff, selection of textbooks and instructional material, and development of curriculum.

Superintendent Henry has a direct supervisory role in hiring staff, administering district programs, and disciplining staff, including for such things as complaints of sexual harassment. Jones' complaints about Perez's harassment made their way to Henry. They were met with no action against Perez. Instead, Jones was retaliated against. Henry showed, in hiring Perez with her known history from McKinney ISD of sexual harassment, in hiring her staff from McKinney ISD, that Henry placed the goal of profiting from the district's physical resources ahead of obeying federal anti-discrimination law and providing a discrimination-free workplace.

52. The Board of Trustees and Henry also showed a lack of training and supervision of district Human Resources staff, as shown most notably through the actions of Zambrano, who himself violated Title VII. Cy-Fair ISD took no remedial action, through proper administrative channels, to address Jones' complaints, and instead retaliated against Jones.

## VI. Conditions Precedent

53. Each of the preceding paragraphs is incorporated herein by reference.

54. Jones filed a complaint with the Equal Employment Opportunity Commission and received a Dismissal and Notice of Right to Sue. This was received on December 26, 2013 and gave Jones 90 days from the date of receipt of the notice (which occurred on December 30, 2013) in which to file his Complaint in this court. As part of Jones negotiations with the District, counsel for the District and Jones agreed to extend Jones' deadline to file this case to April 7, 2014. (See Attached Exhibit A.) Jones had met this deadline.

55. Jones' receipt of the Notice of Right to Sue exhausts his administrative remedies.

## VII. Damages

56. Each of the preceding paragraphs is incorporated herein by reference.

57. Jones seeks damages for the following:

    (1)   loss of wages;
    (2)   loss of benefits;
    (3)   loss of enjoyment of life;
    (4)   emotional pain and mental anguish;
    (5)   attorneys' fees; and
    (6)   pre and post judgment interest.

Jones seeks such further relief to which he is entitled.

## VIII. Jury Demand

58. Jones demands a jury trial and will pay the jury fee for same.

### Conclusion and Prayer

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that Defendants be cited to appear and answer the allegations contained in this Complaint, and upon final hearing, Plaintiff recover judgment of and from the Defendants for his compensatory damages as described above, and that he recover costs, pre-judgment and post-judgment interest at the legal rate, that he recover

his attorneys' fees, and have such other and further relief, both general and special, at law and at equity to which Plaintiff may show himself justly entitled under all of the attending facts and circumstances.

Respectfully submitted,

**LAW OFFICE OF JOSEPH M. SCHREIBER, P.C**

*/s/ Joseph M. Schreiber*
Joseph M. Schreiber
Texas Bar No.: 24037449
Federal Bar No.: 36101
2909 Hillcroft Ave, Suite 350
Houston, Texas 77057
Phone (832) 485-1385
Fax; (281) 822-7140
joe@jms-lawfirm.com
www.jms-lawfirm.com

**ATTORNEY FOR PLAINTIFF**